IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MAGUIRE-O'HARA CONSTRUCTION, INC., an Oklahoma Corporation and UNITED STATES OF AMERICA, by and for the benefit of MAGUIRE-O'HARA CONSTRUCTION, INC.<br><br>Plaintiffs,<br><br>v.<br><br>COOL ROOFING SYSTEMS, INC., a California Corporation and PHILADELPHIA INDEMNITY INSURANCE COMPANY<br><br>Defendant. | Case No. 5:19-cv-705-R |

**ORDER**

Before the Court is Defendant Philadelphia Indemnity Insurance Company's ("PIIC") Motion for Judgment on the Pleadings (Doc. No. 49). Plaintiff Maguire-O'Hara Construction ("Maguire-O'Hara") filed a response in opposition to the motion (Doc. No. 55), to which PIIC filed a reply (Doc. No. 56). After considering the parties' submissions, the Court finds as follows.

Maguire-O'Hara, a construction company based in Oklahoma City, Oklahoma, entered into a subcontract with Defendant Cool Roofing Systems, Inc. ("Cool Roofing") on October 2, 2018 to "provide all materials … labor … [and] equipment …" for a federal

construction project at Tinker Air Force Base for $2,900,000.[1] Doc. No. 1, ¶¶ 7–8; Doc. No. 11.

Cool Roofing, through its surety PIIC, obtained a Federal Miller Act payment bond on August 22, 2018, Bond No. PB03228302286, to fulfill its statutory obligation to provide security to subcontractors performing work on federal construction projects. Doc. No. 1, ¶ 23. After commencing work on the project, Maguire-O'Hara alleges it invoiced Cool Roofing for $648,731.50 for performance on the subcontract, but that Cool Roofing only paid it $285,000. Id. ¶¶ 9–11.

Maguire-O'Hara further alleges that on May 23, 2019, Cool Roofing breached the subcontract— "for convenience" —and required Maguire-O'Hara to halt construction. Doc. No. 1, ¶ 12.[2] At the time, $2,579,240 remained unpaid. Id. ¶ 16. Of the remaining balance, Maguire-O'Hara had completed $363,736[3] worth of work towards its performance on the subcontract. Id. ¶ 18. Plaintiff alleges it was not in breach of contract. Id. ¶ 13.

To date, Cool Roofing has paid Maguire-O'Hara $285,000. Doc. No. 1, ¶ 16. Maguire-O'Hara filed its complaint on July 31, 2019, alleging breach of contract against Cool Roofing and seeking foreclosure on the Miller Act Payment Bond against PIIC, requesting payment for the entire unpaid balance of $2,579,240,[4] or alternatively, $363,736

---

[1] The parties later agreed to reduce the original contract price of $2,900,000 to $2,864,240. Doc. No. 1, ¶ 8.
[2] The applicable provision in the contract between Maguire-O'Hara and Cool Roofing states: "Notwithstanding the foregoing, CONTRACTOR [Cool Roofing] shall have the right to terminate this agreement, by written notice, without Subcontractor being in default for any cause or for its own or OWNER's convenience, and require Subcontractor to immediately stop work. In such event, CONTRACTOR shall pay SUBCONTRACTOR the entire balance of the contract price." Doc. No. 1, ¶ 14.
[3] In its briefing, Defendant PIIC lists the unpaid balance of work completed as $363,731.50 instead of $363,736. Doc. No. 49, p. 2.
[4] Defendant PIIC refers to the remaining balance as a "termination penalty." Doc. No. 49, p. 3.

for unpaid performance on the subcontract and $646,143 in lost expected profits. Doc. No. 1, ¶¶ 17-18. Maguire-O'Hara alleges PIIC is jointly and severally liable, *id.* ¶ 23, and is thus liable for the unpaid amount. PIIC seeks judgment on the pleadings, asserting that, as a matter of law, it cannot be held liable as a surety under the Miller Act for the entire unpaid balance of $2,579,240, the termination penalty for alleged convenience. Doc. No. 49.[5]

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay the trial—any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review under Fed. R. Civ. P. 12(c) is "the standard of review applicable to a Rule 12(b)(6) motion to dismiss." *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005) (internal quotations omitted).

Accordingly, the Court accepts the facts pled by the non-movant as true and grants all reasonable inferences from the pleadings in favor of that party. *Park University Enterprises, Inc. v. American Casualty Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). When the "moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law," the motion for judgment on the pleadings should be granted. *Id.*

Three different dollar amounts underlie Maguire-O'Hara's action: i) the unpaid remaining balance on the subcontract of $2,579,240, ii) the unpaid balance of $363,736 for

---

[5] Cool Roofing failed to timely defend this action, and thus, the Clerk entered the default of Cool Roofing on August 11, 2020, pursuant to Fed. R. Civ. P. 55(a). Doc. No. 50.

completed work, and iii) Maguire-O'Hara's expected profit of $646,143.[6] PIIC's Motion for Judgment on the Pleadings seeks dismissal of Maguire-O'Hara's claim for the "$2,579,240 Subcontract balance." Doc. No. 49, p. 8.

PIIC argues that the Miller Act, 40 U.S.C. § 3133(b)(1) ("the Act"), does not permit Plaintiff to recover the unpaid remaining balance from PIIC in its role as the Miller Act surety because the Act ensures payment to subcontractors and suppliers for completed, unpaid work, but not for uncompleted, unpaid work due to a principal's breach of a subcontract. *Id.* at pp. 10–11. Maguire-O'Hara argues that the Act binds the surety, PIIC, to "the price agreed in the contract between its principal . . . and the subcontractor." Doc. No. 55, p. 1. The parties agree that no material issue of fact remains to be resolved and thus, the Court must decide only whether PIIC is obligated to remit the value of the remaining unpaid balance—on a federal project covered by the Miller Act—to Maguire-O'Hara when the work under contract was incomplete.

"Every person that has furnished labor or material … for which a payment bond is furnished … and that has not been paid in full … may bring a civil action on the payment bond for the amount unpaid." 40 U.S.C. § 3133(b)(1). "[T]he Miller Act establishes the general requirement of a payment bond to protect those who supply labor or materials to a contractor on a federal project." *F. D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 121–22 (1974). "[It] … must be liberally construed 'to effectuate the Congressional intent to protect those whose labor and materials go into public projects.'"

---

[6] Maguire-O'Hara alleges an expected profit percentage of "approximately 22.5%." Doc. No. 1, ¶ 18.

*Limerick v. T. F. Scholes, Inc.*, 292 F.2d 195, 196 (10th Cir. 1961), quoting *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216 (1957). However, a liberal construction of the Miller Act "does not mean that [it] establishes an unlimited basis for recovery …" *United States ex rel. Pertun Constr. Co. v. Harvesters Grp.*, 918 F.2d 915, 917 (11th Cir. 1990).

Historically, under state law, suppliers of labor and material received a lien against improved property. *F.D. Rich Co.*, 417 U.S. at 122. When providing labor and material pursuant to a Government project, however, a lien cannot attach. *Id.* Therefore, the Miller Act and its predecessors were enacted to "provide an alternative remedy to protect the rights of these suppliers." *Id.*

"Two lines of cases governing a subcontractor's recovery from a Miller Act surety are of import here." *United States v. Berkley Regional Ins. Co.*, 986 F. Supp. 2d 660, 665 (D. Md. 2013). One arises when a contractor breaches its contract with a subcontractor. In that event, the Miller Act operates similarly to a lien under state law.

> [S]ince the statute was enacted to confer rights ... which would accrue under a lien … and since unrealized gain or profit for breach of contract cannot be recovered under such a lien, a subcontractor should not … recover for loss of profits on the statutory bond under the Miller Act.

*Arthur N. Olive Co. v. United States ex rel. Marino*, 297 F.2d 70, 72 (1st Cir. 1961). Thus, in the first line of cases, "when a . . . contractor breaches or terminates a subcontract, the subcontractor cannot recover expectation damages from the … surety." *Berkley Regional*, 986 F. Supp. 2d at 665; *see also United States ex rel. Ragghianti Foundations III, LLC v. Peter R. Brown Constr., Inc.*, 49 F. Supp. 3d 1031, 1054 (M.D. Fla. 2014), *aff'd*

5

*sub nom. United States v. Peter R. Brown Constr., Inc.*, 674 F. App'x 901 (11th Cir. 2017) (limiting the surety's liability to the plaintiff's unpaid furnished labor and materials); *Sloan Constr. Co. v. Am. Renovation & Constr. Co.*, 313 F. Supp. 2d 24, 30 (D.P.R. 2004) (concluding Plaintiff could not recover from Miller Act surety when it "did not perform any work or supply materials"). Similarly, the Tenth Circuit declined to allow "recover[y of] damages for breach of contract on a bond required under the Heard Act," the Miller Act's predecessor. *L. P. Friestedt Co. v. U. S. Fireproofing Co.*, 125 F.2d 1010, 1012 (10th Cir. 1942); *see also Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1374 (10th Cir. 1998) ("[T]he general rule is that such damages, including lost profits, are not recoverable under public works bond statutes."). In *L. P. Friestedt*, the Court noted that when a plaintiff recovered, the "outlays … were necessary for the performance of the contract." *Id.* at 1012.

! "The second line of cases applies when a subcontractor fully performs its contractual obligations," but the contractor fails to pay. *Berkley Regional*, 986 F.Supp.2d at 665. When the subcontractor completes performance and the contractor fails to pay, "the surety is obligated to pay the compensation to which the parties have agreed, although this amount exceeds the cost of labor, material, and overhead." *United States ex rel. Woodington Electric Co. v. United Pacific Ins. Co.*, 545 F.2d 1381, 1383 (4th Cir. 1975). The distinction between the two lines of cases is whether the subcontractor completed performance.

Here, Maguire-O'Hara did not complete performance; therefore, this case falls into the first line of cases, which explain that under the Miller Act, subcontractors cannot recover expectation damages from a surety on an incomplete project. The Fifth Circuit, in

*T.M.S. Mech. Contractors*, stated that "the subcontractor can only recover from the surety for additional or increased costs *actually expended* in furnishing the labor or material in the prosecution of the work provided for in the contract ..." *United States ex rel. T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co.*, 942 F.2d 946, 952 (5th Cir. 1991) (emphasis added). The Court held that a claim for profit does not involve actual outlay and thus "falls outside both the letter and the spirit of the [Miller] Act." *Id.* at 953.

PIIC argues that requiring payment of the amount in dispute—the unpaid remaining balance on the subcontract—is akin to requiring payment for work Maguire-O'Hara "did not get to perform," and thus, its claim should be dismissed. Doc. No. 49, p. 12. Maguire-O'Hara responds, citing *Woodington Electric Co.*, by arguing that "the surety is obligated to pay the compensation to which the parties have agreed, although this amount exceeds the cost of labor, materials, and overhead." 545 F.2d at 1383. However, in *Woodington*, the subcontractor completed the project it sought payment for, *id.* at 1382, whereas here, Maguire-O'Hara argues it should be compensated for unpaid, *uncompleted*, work.

At issue is whether the Miller Act affords a remedy to Maguire-O'Hara against PIIC, not whether the subcontract between Maguire-O'Hara and Cool Roofing provides an avenue for Maguire-O'Hara to recover. The text of the Miller Act limits recovery to "furnished labor or material." 40 U.S.C. § 3133(b)(1). Maguire-O'Hara fails to cite one case where a subcontractor collects the unpaid, uncompleted amount of a contract from a surety secured by a public works statute. The text of the Miller Act, its purpose, and the prevailing case law indicate that a Miller Act payment bond surety is not obligated to remit the value of the remaining unpaid balance—on a federal project covered by the Miller

7

Act—to the subcontractor when the work under contract is incomplete. Thus, Maguire-O'Hara's claim against PIIC in its role as surety, for the full contract price of $2,579,240, is dismissed as a matter of law.

Therefore, PIIC's motion for judgment on the pleadings is GRANTED.

IT IS SO ORDERED on this 28th day of September 2020.

*David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE