IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MAGUIRE-O'HARA CONSTRUCTION, INC., an Oklahoma Corporation and UNITED STATES OF AMERICA, by and for the benefit of MAGUIRE-O'HARA CONSTRUCTION, INC. | )<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 5:19-cv-705-R |
| | ) |
| COOL ROOFING SYSTEMS, INC., a California Corporation and PHILADELPHIA INDEMNITY INSURANCE COMPANY | )<br>)<br>)<br>) |
| | ) |
| Defendant. | ) |

**ORDER**

Before the Court is Plaintiff Maguire-O'Hara Construction, Inc.'s ("Maguire-O'Hara") "Motion In Limine to Exclude PIIC's Liability Defenses to the Underlying Construction Subcontract" ("Motion in Limine"). Doc. No. 64. Philadelphia Indemnity Insurance Company ("PIIC") filed a response in opposition to the motion, Doc. No. 69, and Maguire-O'Hara then filed a reply. Doc. No. 70. After considering the parties' submissions, the Court finds as follows.

Maguire-O'Hara, a construction company based in Oklahoma City, Oklahoma, entered into a subcontract with Defendant Cool Roofing Systems, Inc. ("Cool Roofing") on October 2, 2018 to "furnish all management, labor, equipment, tools, [and] materials

…" for a federal construction project at Tinker Air Force Base for $2,900,000.[1] Doc. No. 1-1, ¶¶ 1, 5.

Cool Roofing, through its surety PIIC, obtained a Federal Miller Act payment bond on August 22, 2018, Bond No. PB03228302286, to fulfill its statutory obligation to provide security to subcontractors performing work on federal construction projects. Doc. No. 1, ¶ 23. Maguire-O'Hara alleges that it invoiced Cool Roofing for $648,731.50 for performance on the subcontract after commencing work on the project, but Cool Roofing only paid it $285,000. *Id.* ¶¶ 9–11.

Maguire-O'Hara alleges that on May 23, 2019, Cool Roofing breached the subcontract— "for convenience" —and required Maguire-O'Hara to halt construction. Doc. No. 1, ¶ 12; Doc. No. 1-1, ¶ 30.[2] At the time, $2,579,240 remained unpaid. *Id.* ¶ 16. Of the remaining balance, Maguire-O'Hara had completed $363,736[3] worth of work towards its performance on the subcontract. *Id.* ¶ 18. Plaintiff alleges it was not in breach of contract. *Id.* ¶ 13.

To date, Cool Roofing has paid Maguire-O'Hara $285,000. Doc. No. 1, ¶ 16. This Court granted PIIC's Motion for Judgment on the Pleadings on September 28, 2020, Doc.

---

[1] The parties later agreed to reduce the original contract price of $2,900,000 to $2,864,240. Doc. No. 1, ¶ 8.

[2] The applicable provision in the contract between Maguire-O'Hara and Cool Roofing states: "Notwithstanding the foregoing, CONTRACTOR [Cool Roofing] shall have the right to terminate this agreement, by written notice, without Subcontractor being in default for any cause or for its own or OWNER's convenience, and require Subcontractor to immediately stop work. In such event, CONTRACTOR shall pay SUBCONTRACTOR the entire balance of the contract price." Doc. No. 1, ¶ 14.

[3] In its briefing, Defendant PIIC listed the unpaid balance of work completed as $363,731.50 instead of $363,736. Doc. No. 49, p. 2.

No. 58, limiting Maguire-O'Hara's potential recovery against PIIC to $363,736—the alleged amount of unpaid, completed work.[4] *Id.* pp. 7–8.

A motion in limine is "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial." *See Motion in Limine, Black's Law Dictionary* (11th ed. 2019). The Tenth Circuit has defined a motion in limine as "'a request for guidance by the court regarding an evidentiary question,' which the court may provide at its discretion to aid the parties in formulating trial strategy." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (quoting *United States v. Luce,* 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd,* 469 U.S. 38 (1984).

In its Motion in Limine, Maguire-O'Hara argues that the Court should preclude PIIC from pleading defenses available to Cool Roofing. Doc. No. 64, p. 1. Specifically, Maguire-O'Hara argues that "evidence regarding liability defenses to the underlying construction subcontract between Cool Roofing Systems, Inc. and Maguire-O'Hara" should be excluded. *Id.* Maguire-O'Hara reasons that because the Clerk entered default against Cool Roofing on August 11, 2020, Doc. No. 50, liability has been established and thus PIIC, as Cool Roofing's surety, lost the defenses of its principal because it failed to defend Cool Roofing when it had notice and an opportunity to do so. Doc. No. 64, p. 1.

PIIC argues, however, that it should be permitted to utilize the defenses of Cool Roofing because all defendants have not defaulted or had their claims adjudicated. Doc. No. 69, pp. 5–6. Additionally, it states that i) default judgment has not been entered; ii)

---

[4] Now, Maguire-O'Hara alleges that the amount of unpaid, completed work is $391,756.50 after it "add[ed] an invoice for unpaid materials/equipment-rentals of $28,025." Doc. No. 64, p. 4.

3

evidence related to liability and evidence related to the "calculation of damages" are seemingly intertwined; and iii) PIIC actively participated in this litigation. Doc. No. 69, pp. 3–6.

The Tenth Circuit defines suretyship as "a contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default or miscarriage of another, the principal." *Painters Local Union No. 171 v. Williams & Kelly, Inc.*, 605 F.2d 535, 539 (10th Cir. 1979) (quoting 74 Am. Jur. 2d *Suretyship* § 1 (1974)). For this reason, a "surety's liability under the Miller Act coincides with that of the general contractor, its principal." *United States v. Consol. Constr., Inc.,* No. 92–A–196, 1992 WL 164519, at *2 (D. Colo. June 25, 1992). Accordingly, a "surety [can] plead any defenses available to its principal but [can]not make a defense that could not be made by its principal." *United States ex rel. Davis Contracting, L.P. v. B.E.N. Const., Inc.*, No. 05-1219-MLB, 2007 WL 293915, at *4 (D. Kan. Jan. 26, 2007) (citing *Consol. Constr., Inc.,* 1992 WL 164519, at *2).

As PIIC explains, Maguire-O'Hara improperly conflates the Clerk's entry of default with default judgment. Doc. No. 69, p. 6. While under Fed. R. Civ. P. 55, a party is in *default* if it fails to appear or otherwise defend, the Court considers multiple factors before entering default *judgment. See Bixler v. Foster,* 596 F.3d 751, 762 (10th Cir. 2010) (considering whether the "unchallenged facts constitute a legitimate cause of action"); *see also Payne v. Wilder*, No. CV 16-0312 JB/GJF, 2017 WL 3025912, at *4 (D.N.M. July 7, 2017) (explaining that while an entry of default is an interlocutory step, a default judgment is a "final disposition of the case") (citing *Pinson v. Equifax Credit Info. Servs., Inc.*, 316

F. App'x 744, 749-50 (10th Cir. 2009) ("In deciding whether to set aside an entry of default, courts may consider, among other things, 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.' ")).

"When one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against him until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted." *Gen. Steel Domestic Sales, LLC v. Chumley*, 306 F.R.D. 666, 668 (D. Colo. 2014) (citing *Hunt v. Inter–Globe Energy, Inc.,* 770 F.2d 145, 147 (10th Cir. 1985) (quoting 10C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2690, at 455–56 (1983))). In *Hunt*, the Tenth Circuit concluded that "just as consistent verdict determinations are essential among joint tortfeasors, consistent damage awards on the same claim are essential among joint and several tortfeasors." 770 F.2d at 148. In other words, to avoid inconsistent judgments, entry of default *judgment* against one party should not occur "until and unless the claims against the remaining defendants are resolved on the merits." *Gen. Steel*, 306 F.R.D. at 669. Furthermore, in the surety context, the "correspondence of one party "may be considered as the correspondence of both because … one would not be liable without the other." *Consol. Constr., Inc.*, 1992 WL 164519, at *2 (citing *United States v. United States Fid. & Guar. Co.,* 411 F. Supp. 1333, 1336 (D.S.C. 1976)); *see also United States v. Frank Briscoe Co., Inc.,* 462 F. Supp. 114, 117 (E.D. La.1978) ("[T]he surety generally stands in the shoes of its principal with regard to the overall course of dealing that has taken place between the principal and a subcontractor.").

Here, the Clerk entered default against Cool Roofing on August 11, 2020, Doc. No. 50, but Maguire-O'Hara's motion for default *judgment* against Cool Roofing remains pending and will not be adjudicated until its claims against PIIC are resolved. Doc. No. 51. In the meantime, because judgment has not been entered, PIIC reserves the defenses of its principal, Cool Roofing. *See, e.g.*, *B.E.N. Const.*, 2007 WL 293915, at *4.

Maguire-O'Hara attempts to bolster its position with an Eleventh Circuit decision that bound a surety to a judgment against its principal. Doc. No. 69, p. 8; *Drill South, Inc. v. International Fidelity Ins. Co.*, 234 F.3d 1232 (11th Cir. 2000). In *Drill South*, the Court explained that "[w]e believe that the general rule that a surety is bound by a *judgment* entered against its principal when the surety had both notice and opportunity to defend applies whether the principal and surety are sued in the same action or in separate actions." 234 F.3d at 1237 (emphasis added). *Drill South* is inapplicable here because there is no judgment against Cool Roofing that precludes PIIC from asserting its defenses. As the Court explained above, while the Clerk here entered default against Cool Roofing, *judgment* has not been entered against any defendant.

Finally, Maguire-O'Hara contends that PIIC can only question the "tabulation of damages" alleged by Maguire-O'Hara. Doc. No. 64, pp. 4–5. Again, however, as the court in *B.E.N. Const.* explained, the surety retains its principal's defenses. *See* 2007 WL 293915, at *4. Thus, PIIC, in its role as surety, retains only the defenses of Cool Roofing. If the Court applied Maguire-O'Hara's rationale, PIIC would have no defenses and would be held liable to Cool Roofing's default without an opportunity for adjudication on the merits—an illogical result considering surety law jurisprudence. *See, e.g.*, *Thompson v.*

6

*Gammon*, No. 12-CV-276 MCA/SMV, 2015 WL 11120636, at *2 (D.N.M. Mar. 17, 2015) (refusing to grant default judgment because "incongruous results … would be 'unseemly and absurd...'") (citing *Frow v. De La Vega*, 82 U.S. 552, 554, (1872)).

In conclusion, PIIC is not precluded from asserting the defenses of its principal because judgment has not been entered against the principal, Cool Roofing. Therefore, Maguire-O'Hara's Motion in Limine is DENIED.

**IT IS SO ORDERED** on this 5th day of November 2020.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE